Opinion
 

 PREMO, Acting P. J.—
 

 I. Introduction
 

 This matter arises from the efforts of Lockheed Martin Corporation (Lockheed) to obtain insurance coverage for its multimillion dollar liability
 
 *1445
 
 for cleanup of environmental contamination at 13 sites in California and other states. One of those sites is the Operating Industries, Inc. (OII) landfill in California. Insurers Travelers Casualty and Surety Company and Continental Insurance Company sought summary adjudication of their duty to indemnify Lockheed with regard to the Oil site. The trial court denied the insurers’ motion for summary adjudication on grounds of the insurers’ failure to provide complete copies of their insurance policies and their failure to establish that Lockheed’s claim for indemnity was barred by the policies’ pollution exclusion.
 

 The insurers filed a petition for writ of mandate seeking review of the denial of their motion for summary adjudication, and we issued an alternative writ. We hold that the trial court erred when it denied the insurers’ motion for summary adjudication, because the insurers submitted sufficient evidence of the relevant terms and conditions of their policies and because we conclude that Lockheed’s claim for indemnity is barred by the pollution exclusion as a matter of law. We therefore issue a peremptory writ directing respondent court to vacate its order and to enter a new order granting the motion for summary adjudication.
 

 II. Factual and Procedural Background A.
 
 The OII Site
 

 The Oil site is a 190-acre municipal landfill in Monterey Park, California. From 1948 until 1984, the landfill accepted disposal of hazardous waste. Lockheed utilized the Oil landfill for disposal of hazardous waste from 1972 to 1983. Its liquid waste was transported to the Oil site in 4,200-gallon capacity vacuum trucks. The liquid waste discharged by Lockheed into the landfill totaled over one million gallons of metal degreaser waste, paint sludge, alkaline solution, waste coolant, soapy water, oil, mud, percolate, and other known toxic substances.
 

 Eventually, the Oil landfill site came to the attention of state and federal agencies concerned with environmental contamination. The United States Environmental Protection Agency (EPA) determined that the Oil site was contaminated by hazardous substances as defined by section 101(14) (42 U.S.C. § 9601(14)) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 United States Code section 9601 et seq. The Oil site was placed on both the California hazardous waste priority list and the national priority list of the United States’ most contaminated sites.
 

 The EPA found that the environmental contamination at the Oil site included leachate seepage, landfill gas, noxious odors, and groundwater
 
 *1446
 
 contamination. As part of its efforts to protect the public and the environment from the contaminated Oil site, the EPA entered into consent decrees allocating the cost of site investigation and cleanup to numerous potentially responsible parties, including Lockheed.
 

 The first partial consent decree obligated the potentially responsible parties, including Lockheed, to pay more than $60 million to stabilize the Oil landfill and to construct and operate a leachate collection system and treatment plant. Lockheed also entered into the third partial consent decree, which required payment of additional moneys and participation in the design, construction, and maintenance of a gas collection and destruction system, a cover system, and a surface water management system. Lockheed estimates that it has spent nearly $1 million to date in complying with its obligations under the Oil site consent decrees, and further estimates that it will incur an additional $4 million in compliance costs.
 

 Lockheed has also been named as a defendant in a personal injury action filed in Los Angeles County Superior Court by residents of the area surrounding the Oil site who claim illness and emotional distress caused by emissions from the site.
 

 B.
 
 The Insurance Coverage Litigation
 

 Lockheed identified several insurance companies as providers of general liability policies covering its potential multimillion dollar liability for environmental damages and personal injuries arising from the Oil site. Among these, insurance companies are Aetna Casualty and Surety Company (Aetna) (now Travelers Casualty and Surety Company), Continental Insurance Company as successor in interest to Harbor Insurance Company (Harbor), and Leslie Walpole Procter as the representative of various underwriters at Lloyd’s of London (London Market Insurers).
 
 [1]
 

 Specifically, Lockheed determined that it had been issued six general liability policies by Aetna which covered the Oil site for the period of 1979 to 1985. Lockheed also identified six Harbor general liability policies as covering the Oil site for the period of 1969 to 1978. Lockheed demanded that the insurance companies defend and indemnify it against the claims of the EPA and the personal injury plaintiffs, but each insurance company refused to do so.
 

 London Market Insurers then filed a complaint for declaratory relief, seeking adjudication of its duty to defend and indemnify Lockheed with
 
 *1447
 
 regard to claims arising from 13 contaminated sites in California and other states. Lockheed responded by filing a cross-complaint against London Market Insurers and numerous other insurance companies, seeking declaratory relief and alleging breach of contract and breach of the covenant of good faith and fair dealing by the insurance companies who had refused defense and indemnification. As to the Oil site, Lockheed sought a declaration that Aetna and Continental, among others, owed a duty to indemnify Lockheed, and that the insurers had breached that contractual duty.
 
 [2]
 
 In their answers to Lockheed’s cross-complaint, the insurers raised the affirmative defense of the pollution exclusion.
 

 C.
 
 The Insurers’ Motion for Summary Adjudication of the Duty to Indemnify re Oil Site Based on the Pollution Exclusion
 

 Aetna moved for summary adjudication of its duty to indemnify Lockheed regarding the Oil site. Specifically, Aetna sought adjudication of the sixth cause of action for declaratory relief/duty to indemnify, and the seventh cause of action for breach of contract/duty to indemnify, of the fifth amended cross-complaint.
 
 [3]
 
 Continental joined in the motion for summary adjudication.
 
 [4]
 

 In its motion, Aetna did not dispute that Lockheed’s claim for indemnification fell within the policies’ insuring agreement, which stated: “The
 
 company
 
 will pay on behalf of the
 
 insured
 
 all sums which the
 
 insured
 
 shall become legally obligated to pay as damages because of [¶] (1)
 
 bodily injury, malpractice
 
 or
 
 property damage
 
 to which this insurance applies caused by an
 
 occurrence,
 
 or [¶] (2)
 
 personal injury
 
 to which this insurance applies.”
 

 Instead, Aetna argued that Lockheed’s claim for indemnification of the Oil site damages was barred by the affirmative defense of the pollution exclusion. The pollution exclusion in the Aetna policies used the following form: “This insurance does not apply: [¶] . . . Q. To
 
 bodily injury
 
 or
 
 property damage
 
 arising out of the discharge, dispersal, release or escape of
 
 *1448
 
 smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.”
 
 [5]
 
 This form of the exclusion is sometimes called the “qualified pollution exclusion.” (See, e.g.,
 
 Bell Lumber and Pole Co.
 
 v.
 
 U.S. Fire Ins. Co.
 
 (8th Cir. 1995) 60 F.3d 437, 440.)
 

 Aetna argued that it was undisputed that Lockheed had deliberately dumped hazardous wastes into the Oil landfill, and that the environmental contamination at the Oil site was caused by this dumping. Accordingly, because the claims against Lockheed for property damage and personal injury arose from the intentional discharge of pollutants upon land, Aetna argued that coverage for those claims was barred by the plain language of the pollution exclusion.
 

 Aetna also contended that it was entitled to summary adjudication because Lockheed could not meet its burden of proving that the Oil claims came within the sudden and accidental exception to the pollution exclusion. Aetna argued that the intentional dumping of hazardous waste in the Oil landfill could not constitute a “sudden and accidental” discharge of pollutants. Aetna also pointed to Lockheed’s interrogatory responses, which stated that “[a]dditional occurrences such as faulty equipment, spills, floods, earthquakes, or fires may have constituted or resulted in releases at the Oil site,” arguing that these responses were merely speculative and did not constitute probative evidence of any sudden and accidental releases of pollution.
 

 Lockheed opposed the motion for summary adjudication on several grounds. First, Lockheed contended that the evidentiary support for the insurers’ motion was insufficient because the insurers did not include properly authenticated complete copies of their policies. Second, Lockheed argued that coverage of the Oil claims was not barred by the pollution exclusion because the EPA’s claims focused upon groundwater contamination. Lockheed interpreted the pollution exclusion to exclude coverage only for damage arising from discharge of pollutants into land or a watercourse or body of water, with the result that damage arising from discharge of pollutants into groundwater, which is neither land nor a body of water or watercourse, was not excluded from coverage.
 

 
 *1449
 
 Finally, Lockheed argued that summary adjudication must be denied because the insurers had failed to meet their burden of negating the applicability of the sudden and accidental exception to the pollution exclusion. According to Lockheed, triable questions of fact exist as to whether pollutants suddenly and accidentally escaped from containment in the landfill to the surrounding environment as a result of fires, earthquakes, and heavy rains.
 

 D.
 
 The Trial Court’s Order Denying the Insurers’
 

 Motion for Summary Adjudication
 

 The trial court denied the insurers’ motion for summary adjudication. In its written order, the court explained its reasons for doing so. The court concluded that the insurers had failed to authenticate the Aetna and Harbor policies, based upon the holding of
 
 Certain Underwriters at Lloyd’s of London
 
 v.
 
 Superior Court
 
 (1997) 56 Cal.App.4th 952 [65 Cal.Rptr.2d 821] (hereafter,
 
 Certain Underwriters),
 
 that an insurer cannot move for summary adjudication unless it submits copies of the actual policies at issue or secondary evidence demonstrating the terms and conditions of the policies.
 

 The trial court found that Aetna’s policy excerpts were insufficient and that Continental’s policy copies were not properly authenticated and were, in any event, disputed by Lockheed because multiple and different versions of the policies existed. The court acknowledged that the parties had stipulated to the use of the policy excerpts in motions, but nevertheless required copies of the complete policies to be filed with the motion for summary adjudication.
 

 The trial court also denied the motion for summary adjudication on the merits. Its order was based upon several specific rulings. First, the trial court ruled that the insurers have the burden of proving that the sudden and accidental exception does not apply to the claims against Lockheed, based upon the trial court’s belief that it was required to follow the holding in
 
 Strubble
 
 v.
 
 United Services Auto. Assn.
 
 (1973) 35 Cal.App.3d 498, 504-505 [110 Cal.Rptr. 828] (hereafter,
 
 Strubble),
 
 that the “[the insurer] had to negative its exception (earthquake) to its exclusion (earth movement) since the burden of proof of its defense of noncoverage of the policy sued on rested on it.”
 

 The trial court consequently determined that the insurers could not obtain summary adjudication of the duty to indemnify unless they established that no sudden and accidental events caused the Oil damages. The court rejected the insurers’ argument that it was Lockheed’s burden to establish that the
 
 *1450
 
 Oil damages were caused by sudden and accidental pollution events and that the insurers could prevail by pointing to Lockheed’s lack of evidence.
 

 Second, the trial court ruled that the relevant inquiry for determining whether coverage was barred by the pollution exclusion is whether the discharge or migration of contaminants from the landfill to the environment was sudden and accidental, not whether the original disposal was sudden and accidental. In so ruling, the trial court expressly followed the decision of the Washington Supreme Court in
 
 Queen City Farms
 
 v.
 
 Central Nat. Ins. Co.
 
 (1994) 126 Wn.2d 50 [882 P.2d 703] (hereafter,
 
 Queen City Farms).
 

 Finally, the trial court concluded that the insurers had failed to meet their burden to prove as a matter of law that the Oil damage had been caused by events which were neither sudden nor accidental.
 

 III. Discussion
 

 An order denying a motion for summary adjudication may be reviewed by way of a petition for writ of mandate. (Code Civ. Proc., § 437c, subd.
 
 (I).)
 

 [6]
 

 Where the trial court’s denial of a motion for summary judgment will result in trial on non-actionable claims, a writ of mandate will issue.
 
 (Lompoc Unified. School Dist.
 
 v.
 
 Superior Court
 
 (1993) 20 Cal.App.4th 1688, 1692 [26 Cal.Rptr.2d 122]; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1997) ¶ 15:106, p. 15-38.) Likewise, a writ of mandate may issue to prevent trial of nonactionable claims after the erroneous denial of a motion for summary adjudication.
 

 Since a motion for summary judgment or summary adjudication “involves pure matters of law,” we review a ruling on the motion de novo to determine whether the moving and opposing papers show a triable issue of material fact.
 
 (Addy
 
 v.
 
 Bliss & Glennon
 
 (1996) 44 Cal.App.4th 205, 214 [51 Cal.Rptr.2d 642]; see also
 
 Saldana
 
 v.
 
 Globe-Weiss Systems Co.
 
 (1991) 233 Cal.App.3d 1505, 1514 [285 Cal.Rptr. 385].) Thus, the appellate court need not defer to the trial court’s decision. “ ‘We are not bound by the trial court’s stated reasons, if any, supporting its ruling; we review the ruling, not its rationale.’ ”
 
 (Camp
 
 v.
 
 Jeffer, Mangels, Butler & Marmaro
 
 (1995) 35 Cal.App.4th 620, 629 [41 Cal.Rptr.2d 329] quoting
 
 Stratton
 
 v.
 
 First Nat. Life Ins. Co.
 
 (1989) 210 Cal!App.3d 1071, 1083 [258 Cal.Rptr. 721].)
 

 A.
 
 Evidence of Insurance Policies
 

 We conclude that the trial court erred in denying the insurers’ motion for summary adjudication on the ground that the insurers did not
 
 *1451
 
 provide properly authenticated complete copies of their insurance policies. The trial court’s ruling was based upon an unjustifiably narrow view of the holding in
 
 Certain Underwriters, supra,
 
 56 Cal.App.4th 952.
 

 In
 
 Certain Underwriters
 
 the appellate court reviewed an order denying Certain Underwriters’ motion for summary adjudication of its duty to defend in an environmental insurance coverage dispute. (56 Cal.App.4th at p. 954.) As evidence of its policies, Certain Underwriters referred to the insured’s allegations of coverage in its complaint.
 
 (Id.
 
 at p. 955.) The court held that allegations in a complaint are not sufficient evidence of an insurance policy to support an insurer’s motion for summary adjudication of its duty to defend, stating that “. . . absent relevant admissions by the insured, an insurer moving for summary adjudication of issues or summary judgment on the merits of a case in which coverage is disputed must provide copies of the policies or, if the policies are missing, secondary evidence sufficient to inform the court of the relevant terms and conditions of the insurance contract.”
 
 (Id.
 
 at p. 955, fn. omitted.)
 

 The court in
 
 Certain Underwriters
 
 also stated that “. . . the terms of any policy may be proved by a specific admission (either in a pleading or in response to a request for admissions or in discovery) or by an implied admission (such as a failure to file any opposition at all to a defendant’s motion for summary judgment or adjudication).” (56 Cal.App.4th at pp. 958-959.) Thus,
 
 Certain Underwriters
 
 does not stand for the proposition that an insurer moving for summary adjudication must provide complete and authenticated copies of the pertinent insurance policies.
 

 We agree with the ruling in
 
 Certain Underwriters
 
 that an insurer moving for summary adjudication of issues in a coverage dispute must provide sufficient evidence of the policies to inform the court of the policies’ relevant terms and conditions. We further agree that sufficient evidence may consist of secondary evidence, such as the insured’s implied admission of the policy terms and conditions.
 

 Applying these rules to the motion for summary adjudication filed by Aetna and Continental, we find that the insurers provided sufficient secondary evidence of the pertinent policies to inform the court of their relevant terms and conditions. The excerpts of the policies’ insuring agreements and pollution exclusions include the terms and conditions which are relevant to a ruling on the insurers’ duty to indemnify Lockheed.
 
 [7]
 

 We also find that there is no true dispute as to the policies’ relevant terms and conditions. Lockheed stipulated to the use of the excerpts in the parties’
 
 *1452
 
 motions, and never disputed the accuracy of the language of the insuring agreements and pollution exclusions which was contained in the excerpts and in the insurers’ separate statements of fact in support of their motion for summary adjudication. Lockheed’s failure to dispute the accuracy of the language of the insurers’ policy excerpts constitutes an implied admission as to the relevant policy terms and conditions.
 

 Having rejected Lockheed’s argument that the insurers’ motion for summary adjudication must be denied due to insufficient evidence of the insurance policies, we now review the motion on the merits.
 

 B.
 
 Allocation of the Burden of Proof in a Cross-defendant’s Motion for Summary Adjudication
 

 We first review the general rules regarding the allocation of the burden of proof in a motion for summary adjudication, as set forth in section 437c. In the next section, we discuss the burden of proof when a cross-defendant insurer moves for summary adjudication of its duty to indemnify based upon the pollution exclusion.
 

 A party may move for summary adjudication on grounds that one or more causes of action has no merit or there is no affirmative defense thereto. (§ 437c, subd. (f)(1).) Regarding the burden of proof, section 437c, subdivision (o)(2), provides that a “cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the . . . cross-defendant has met that burden, the burden shifts to the . . . cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The . . . cross-complainant may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.”
 

 We have previously set forth the showing which a defendant or cross-defendant seeking summary adjudication is required to make. “ ‘It is clear to us, from the requirement of the 1992 amendment that a defendant have “shown that one or more elements of the cause of action . . . cannot be established” (Code Civ. Proc., § 437c, former subd. (n)(2), Stats. 1992, ch. 1348, § 1), that a defendant must make an affirmative
 
 showing
 
 in support of his or her motion. Such a showing connotes something significantly more than simply “pointing out to the . . . court” that “there is an absence of
 
 *1453
 
 evidence”: before the burden of producing even a prima facie case should be shifted to the plaintiff in advance of trial, a defendant who cannot negate an element of the plaintiff’s case should be required to produce direct or circumstantial evidence that the plaintiff not only does not have but cannot reasonably expect to obtain a prima facie case. But where such a showing can be made we consider it both fair to the defendant and consistent with efficient administration of justice that the plaintiff be called upon, on risk of summary judgment, to make a prima facie case.’ ”
 
 (Addy
 
 v.
 
 Bliss & Glennon, supra,
 
 44 Cal.App.4th at p. 214 quoting
 
 Hagen
 
 v.
 
 Hickenbottom
 
 (1995) 41 Cal.App.4th 168, 186 [48 Cal.Rptr.2d 197] (hereafter,
 
 Hagen).)
 

 C.
 
 The Burden of Proof Regarding the Pollution Exclusion
 
 1.
 
 The Burden of Proof at Trial
 

 Pursuant to Evidence Code section 500, the general rule is that a party has the burden of proof at trial as to the existence or nonexistence of each fact which is essential to the claim or defense that he is asserting. With regard to claims for insurance coverage, it is axiomatic that the insured has the burden of establishing that the occurrence which forms the basis of the coverage claim is within the basic scope of the insurance coverage.
 
 (Weil
 
 v.
 
 Federal Kemper Life Assurance Co.
 
 (1994) 7 Cal.4th 125, 148 [27 Cal.Rptr.2d 316, 866 P.2d 774, 32 A.L.R.5th 789].)
 

 It is also axiomatic that the insurer has the burden of proving that an otherwise covered claim is barred by a policy exclusion.
 
 (Royal Globe Ins. Co.
 
 v.
 
 Whitaker
 
 (1986) 181 Cal.App.3d 532, 537 [226 Cal.Rptr. 435];
 
 Haskel, Inc.
 
 v.
 
 Superior Court
 
 (1995) 33 Cal.App.4th 963, 978, fn. 13 [39 Cal.Rptr.2d 520].) However, there are few published appellate decisions in California which have considered the issue of whether the insured or the insurer has the burden of proving that coverage is restored to an otherwise excluded claim because the claim falls within an exception to the exclusion. In particular, there are no published decisions in California which have ruled upon the issue of whether the insured or the insurer has the burden of proof regarding the sudden and accidental exception to the pollution exclusion.
 

 The trial court relied upon the decision in
 
 Strubble, supra,
 
 35 Cal.App.3d 498, as holding that the insurer has the burden of negating an exception to an exclusion. The insurers argue that
 
 Strubble
 
 is not on point because the decision involved a first party claim made under an all-risks homeowners policy, while the case at hand involves a third party claim under a general liability policy. A more persuasive decision, according to the insurers, is the decision of the Ninth Circuit in
 
 Aeroquip Corp.
 
 v.
 
 Aetna Cas. and Sur. Co., Inc.
 
 (9th Cir. 1994) 26 F.3d 893 (hereafter,
 
 Aeroquip).
 

 
 *1454
 
 We agree that
 
 Strubble
 
 is not on point, and that the decision in
 
 Aeroquip
 
 correctly sets forth the burden of proof on the sudden and accidental exception. The court in
 
 Aeroquip
 
 stated that “[although courts are split on this issue, the majority of decisions place the burden on the insured [citations]. [¶] This allocation aligns the burden with the benefit and is consistent with the general principle under California law that ‘ “[w]hile the burden is on the insurer to prove a claim covered falls within an exclusion, the burden is on the insured initially to prove that an event is a claim within the scope of the basic coverage.” ’ [Citation.] The ‘sudden and accidental’ exception creates coverage where it would otherwise not exist and thus the insured’s burden of proving coverage extends to proof of this exception.”
 
 (Aeroquip, supra,
 
 26 F.3d at pp. 894-895; accord,
 
 LaFarge Corp.
 
 v.
 
 Travelers Indem. Co.
 
 (11th Cir. 1997) 118 F.3d 1511, 1516;
 
 Bell Lumber & Pole Co.
 
 v.
 
 U.S. Fire Ins. Co., supra,
 
 60 F.3d at p. 441;
 
 St. Paul Fire and Marine Ins.
 
 v.
 
 Warwick Dyeing
 
 (1st Cir. 1994) 26 F.3d 1195, 1200 (hereafter,
 
 Warwick); Northern Ins. Co.
 
 v.
 
 Aardvark Associates
 
 (3d Cir. 1991) 942 F.2d 189, 195;
 
 E.I. du Pont de Nemours
 
 v.
 
 Allstate Ins.
 
 (Del. 1997) 693 A.2d 1059, 1061;
 
 Highlands Ins. Co.
 
 v.
 
 Aerovox Inc.
 
 (1997) 424 Mass. 226 [676 N.E.2d 801, 805] (hereafter,
 
 Aerovox).)
 

 For several reasons, we feel no compulsion to follow the purported holding of
 
 Strubble
 
 over the well-reasoned and on-point decisions of the Ninth Circuit and other federal and state courts which have held that the insured has the burden of proof on the sudden and accidental exception. We agree with the insurers that the decision in
 
 Strubble
 
 is distinguishable because it concerns a first party claim under an all-risks homeowners policy.
 
 0Strubble, supra,
 
 35 Cal.App.3d at p. 504.) In
 
 Strubble,
 
 the court itself recognized that to place the burden of negating an exception to an exclusion upon the insurer was “unusual,” expressly stating that “in an action upon an all-risks policy such as the one before us (unlike a specific peril policy),
 
 the insured does not have to prove that the peril proximately causing his loss was covered by the policy.
 
 [Italics added.] This is because the policy covers
 
 all risks
 
 save for those risks specifically excluded by the policy. The insurer, though, since it is denying liability upon the policy, must prove the policy’s noncoverage of the insured’s loss—that is, that the insured’s loss was proximately caused by a peril specifically excluded from the coverage of the policy.”
 
 {Id.
 
 at p. 504.)
 

 In other words, the court in
 
 Strubble
 
 determined that an insured who makes a first party claim under an all-risks homeowners policy
 
 has no burden of proof.
 
 In effect, there is a presumption of coverage, which the insurer has the burden to rebut by proving that the claim falls within a specific policy exclusion. Since the insured has no initial burden to prove that his first party claim falls within the basic scope of coverage of the
 
 *1455
 
 all-risks policy, it follows, under
 
 Strubble,
 
 that the insured has no burden to prove that coverage is restored by an exception to the exclusion. Thus, because only the insurer had a burden of proof regarding coverage under the all-risks homeowners policy at issue in
 
 Strubble,
 
 it was the insurer who was required to negate the earthquake exception to the earth movement exclusion.
 

 In contrast, it is undisputed in the present case that Lockheed, as the insured, has the burden of proving that its claim for coverage of the Oil site third party damages comes within the insuring agreement of the insurers’ general liability policies. Accordingly, once the insurers prove that the Oil claims are excluded by the pollution exclusion, the burden shifts to Lockheed to prove that coverage is restored because the claims fall within the sudden and accidental exception to the pollution exclusion.
 

 As several courts have noted, placing the burden of proof on the insured to establish the sudden and accidental exception is consistent with the policy rationale that “[t]he rule places the burden on the party who will generally have access to facts that show the discharge of pollutants was sudden and unexpected.”
 
 (Aeroquip, supra,
 
 26 F.3d at p. 895; accord,
 
 Aerovox, supra, 616
 
 N.E.2d at p. 805.)
 

 Courts around the country have also been occupied with the issue of defining the “sudden and accidental” exception. As we recently discussed in another environmental insurance coverage case, we find the issue has been analyzed thoroughly and correctly by the Second Appellate District in
 
 Shell Oil Co.
 
 v.
 
 Winterthur Swiss Ins. Co.
 
 (1993) 12 Cal.App.4th 715 [15 Cal.Rptr.2d 815] (hereafter,
 
 Shell Oil). (FMC Corp.
 
 v.
 
 Plaisted & Companies (1998) 61
 
 Cal.App.4th 1132 [72 Cal.Rptr.2d 467] (hereafter,
 
 FMC Corp.).)
 
 In
 
 Shell Oil,
 
 the court concluded that the plain language of the phrase “sudden and accidental” discharge of pollutants means an abrupt, unintended, and unexpected discharge of pollutants. (12 Cal.App.4th at pp. 754-755; accord,
 
 Standun, Inc.
 
 v.
 
 Fireman’s Fund Ins. Co.
 
 (1998) 62 Cal.App.4th 882, 889 [73 Cal.Rptr.2d 116];
 
 [8]
 

 ACL Technologies, Inc.
 
 v.
 
 Northbrook Property & Casualty Ins. Co.
 
 (1993) 17 Cal.App.4th 1773, 1787-1788 [22 Cal.Rptr.2d 206].) We agree that the interpretation of “sudden” must include a temporal component; otherwise, the word is rendered mere surplusage.
 
 (FMC Corp., supra,
 
 61 Cal.App.4th at p. 1146;
 
 Shell Oil, supra,
 
 12 Cal.App.4th at p. 755.)
 

 
 *1456
 
 2.
 
 The Burden of Proof in a Motion for Summary Adjudication Based on the Qualified Pollution Exclusion
 

 The burden of proof regarding the sudden and accidental exception to the pollution exclusion is different in a motion for summary adjudication than it is at trial. When an insurer moves for summary adjudication of the duty to indemnify based upon the affirmative defense of the qualified pollution exclusion, the insurer has the burden of establishing that affirmative defense as a matter of law, pursuant to section 437c, subdivision (n)(2). Having met that initial burden, the insurer then has the additional burden, pursuant to section 437c, subdivision (o)(2), of making an affirmative showing that the insured
 
 cannot establish
 
 that the claims fall within the sudden and accidental exception to the pollution exclusion.
 

 In order to show that the sudden and accidental exception “cannot be established,” the insurer must show by direct or circumstantial evidence that the insured cannot reasonably be expected to make a prima facie showing that the claimed environmental damages arose from a sudden and accidental discharge, dispersal, release, or escape of pollutants. The insurer may point to the insured’s interrogatory answers as evidence that the insured has no facts to support its theory of liability (i.e., the theory that the damages are covered because they arose from sudden and accidental pollution discharges). (See, e.g.,
 
 Hagen, supra,
 
 41 Cal.App.4th at p. 186.)
 

 If the insurer meets this burden in its motion for summary adjudication, the burden of proof then shifts to the insured to show that a triable issue of material fact exists as to the application of either the pollution exclusion or the sudden and accidental exception.
 

 3.
 
 The Relevant Release of Pollutants Under the Sudden and Accidental Exception
 

 In determining whether a third party claim for environmental contamination damages is covered under the sudden and accidental exception to the pollution exclusion, the issue arises as to what polluting event is considered the relevant sudden and accidental “discharge, release, dispersal or escape.” In the context of industrial waste dumping, there appear to be two divergent views regarding the relevant discharge. One view focuses on whether
 
 the movement of pollutants away from the disposal site
 
 was sudden and accidental, while the second, and probable majority, view focuses on whether
 
 the initial discharge into the disposal site
 
 was sudden and accidental.
 

 The line of cases which focus on the movement of pollutants away from the place of disposal is exemplified by the decision of the Washington
 
 *1457
 
 Supreme Court in
 
 Queen City Farms, supra,
 
 882 P.2d 703.
 
 [9]
 
 The facts in
 
 Queen City Farms
 
 involved a disposal site owned by Queen City Farms, Inc., consisting of three pits scooped from the ground and used for disposal of liquid wastes.
 
 (Id.
 
 at p. 708.) For many years, toxic industrial waste was dumped into the pits. The property owners believed that the wastes would be filtered by clay, sand, and gravel.
 
 (Ibid.)
 

 The EPA determined that groundwater was contaminated by hazardous waste leaking from the Queen City Farms disposal site. (882 P.2d at p. 707.) Queen City Farms entered into a consent decree for cleanup of the site. Insurance coverage litigation ensued regarding the obligation of Queen City Farm’s insurance carriers to pay the estimated $5.5 million cleanup costs.
 
 (Id.
 
 at p. 708.) Several insurers denied coverage based upon the qualified pollution exclusion, and sought summary judgment.
 
 (Id.
 
 at pp. 709, 716.)
 

 In affirming denial of the insurers’ motion for summary judgment, the Washington Supreme Court rejected the insurers’ argument that “. . . the deliberate dumping of waste materials into the pits over many years in the regular course of business is not. . . ‘sudden and accidental.’ ”
 
 (Queen City Farms, supra,
 
 882 P.2d at p. 717.) Instead, the court held that “the relevant polluting event is the discharge, dispersal, release, or escape of toxic material into the environment, and where material has been deposited in a place which was believed would contain or safely filter the material, such as a waste disposal pit or sanitary landfill, the polluting event is the discharge, dispersal, release, or escape from that place of containment into or upon the land, the air or water, including groundwater.”
 
 (Id.
 
 at p. 719.)
 

 In reaching this holding, the Washington Supreme Court also ruled that the meaning of “sudden and accidental” in the sudden and accidental exception is ambiguous, and must be construed against the insurers as “unexpected and unintended,” without any temporal component.
 
 (Queen City Farms, supra,
 
 882 P.2d at pp. 720, 725.) Utilizing this definition, the court further ruled that “if the damage results from the dispersal of materials into the groundwater from a place of containment where the insured believed they would remain or from which they would be safely filtered, and that dispersal was unexpected or unintended, then coverage is provided under the policies.”
 
 (Id.
 
 at p. 725.)
 

 
 *1458
 
 In the present case, the trial court followed
 
 Queen City Farms, supra,
 
 882 P.2d 703, in denying the insurers’ motion for summary adjudication on grounds that the relevant discharge was the escape into the environment from the Oil landfill and that the insurers had not negated the possibility that any escape was sudden and accidental. However, we find that the trial court erred in relying upon the ruling of
 
 Queen City Farms.
 
 The insurers correctly point out that
 
 Queen City Farms
 
 cannot be followed in this case because the decision, taken as a whole, is inconsistent with California law.
 
 [10]
 

 California courts do not agree with the Washington Supreme Court’s ruling that the sudden and accidental exception is ambiguous and must be construed against the insurers to mean “unexpected and unintended” by the insured. As we have discussed, California courts have uniformly ruled that the language of the sudden and accidental exception is unambiguous and its plain language meaning is “abrupt,” “unintended, and unexpected.” (See, e.g.,
 
 Shell Oil, supra,
 
 12 Cal.App.4th at pp. 754-755.)
 
 [11]
 

 We are also concerned by the implied rationale of
 
 Queen City Farms, supra,
 
 882 P.2d 703, that when an insured lawfully disposes of hazardous waste without any expectation or intention that the environment be polluted, the insured should not be penalized by the loss of insurance coverage for unintended environmental damage. The apparent majority view appears to be to the contrary: that whether the insured’s dumping was lawful is irrelevant to the analysis of coverage under the sudden and accidental exception to the pollution exclusion. We find more persuasive the decision of the federal court in Michigan, which stated that “. . . the purpose of the disposal, however laudatory, is not a dispositive factor. Nor is the movement of waste after its introduction into the environment, be it by air, earth or water. The waste material transported to the [landfill] was intentionally placed into the ground. Regardless of the disposer’s good intentions, the pollution creating the discharge cannot be characterized as sudden and accidental.”
 
 (Upjohn Co.
 
 v.
 
 Aetna Cas. and Sur. Co.
 
 (W.D.Mich. 1993) 850 F.Supp. 1342, 1353.)
 

 Numerous other decisions reflect the view expressed in
 
 Upjohn Co.
 
 v.
 
 Aetna Cas. & Sur. Co., supra,
 
 850 F.Supp. 1342, that the relevant discharge
 
 *1459
 
 is the initial disposal of toxic waste into the landfill, and when that disposal was intentional, it cannot be considered sudden and accidental. (See, e.g.,
 
 Standun, Inc.
 
 v.
 
 Fireman’s Fund Ins. Co., supra,
 
 62 Cal.App.4th at pp. 889-890, 892;
 
 LaFarge Corp.
 
 v.
 
 Travelers Indem. Co., supra,
 
 118 F.3d at p. 1516;
 
 Warwick, supra,
 
 26 F.3d at p. 1204;
 
 Transamerica Ins. Co.
 
 v.
 
 Duro Bag Mfg. Co.
 
 (6th Cir. 1995) 50 F.3d 370, 372;
 
 Hyde Athletic Industries
 
 v.
 
 Continental Cas. Co.
 
 (E.D.Pa. 1997) 969 F.Supp. 289, 301 [declining to follow
 
 Queen City
 
 Farms];
 
 Waste Management
 
 v.
 
 Peerless Ins. Co., supra,
 
 340 S.E.2d 374, 382;
 
 Employers Ins. of Wausau
 
 v.
 
 George
 
 (1996) 41 MassApp. 719 [673 N.E.2d 572, 577].)
 

 We also observe that decisions such as
 
 Queen City Farms
 
 fail to distinguish between the relevant discharge of pollutants for purposes of the sudden and accidental exception, and the relevant damage, for purposes of the initial grant of coverage. The difference was pointed out by the federal court in
 
 Warwick,
 
 which stated that “[t]he damage in this case is the contamination of the environment by hazardous substances disposed of in the landfill. This environmental damage is essentially coterminous with the so-called ‘release’ of hazardous substances from the landfill to the environment. To describe such releases as a separate event constituting an independent discharge would eviscerate the important distinction established between intentional and expected damages and intentional and expected discharges.” (26 F.3d at p. 1204; accord,
 
 Standun, Inc.
 
 v.
 
 Fireman’s Fund Ins. Co., supra,
 
 62 Cal.App.4th at p. 889.)
 

 Similarly, another federal court concluded that “[w]ithout the discharge into the holding ponds, the resulting groundwater contamination simply would not have developed. Thus, the property damage originated from, grew out of, and flowed from [the insured’s] discharge of toxic chemicals into the holding ponds.”
 
 (Broderick Inv. Co.
 
 v.
 
 Hartford Acc. & Indem. Co.
 
 (10th Cir. 1992) 954 F.2d 601, 607-608; see also
 
 Warwick, supra,
 
 26 F.3d at p. 1204.)
 

 Having determined that the relevant discharge is the initial disposal of waste into the disposal site, the majority of courts also decline to microanalyze an insured’s long-term, routine disposal of industrial wastes in order to find discrete sudden and accidental polluting events. (See, e.g.,
 
 Hyde Athletic Industries
 
 v.
 
 Continental Cas. Co., supra, 969
 
 F.Supp. at p. 301;
 
 Lumbermens Mut.
 
 v.
 
 Belleville Industries
 
 (1st Cir. 1991) 938 F.2d 1423, 1427;
 
 Quaker State Minit-Lube
 
 v.
 
 Fireman’s Fund Ins.
 
 (10th Cir. 1995) 52 F.3d 1522, 1528;
 
 Sharon Steel
 
 v.
 
 Aetna Cas. and Sur.
 
 (Utah 1997) 931 P.2d 127, 135.)
 

 This is not to say that environmental contamination damages connected with industrial dumping are automatically barred from coverage under the
 
 *1460
 
 sudden and accidental exception to the pollution exclusion. An intervening event may occur between the initial “disposal of waste on the landfill and the actual damage that eventually resulted,” and that intervening event may have been sudden and accidental.
 
 (Warwick, supra,
 
 26 F.3d at p. 1204.)
 

 We caution that the insured must do more than point to possible intervening events, such as a fire, to support a claim for coverage under the sudden and accidental exception. (See
 
 Millipore Corp.
 
 v.
 
 Travelers Indem. Co.
 
 (1st Cir. 1997) 115 F.3d 21, 34;
 
 Aerovox, supra,
 
 676 N.E.2d at pp. 806-807.) The insured must show that the intervening event was sudden and accidental and did not arise from the disposal of wastes in the ordinary course of business.
 
 (Aerovox, supra,
 
 676 N.E.2d at pp. 806-807.) The insured must also show that an appreciable amount of environmental damage was caused by the intervening event, over and above that caused by routine dumping into the disposal site. (See
 
 Aerovox, supra, 676
 
 N.E.2d at pp. 806-807;
 
 Home Indem. Co.
 
 v.
 
 Hoechst Celanese Corp.
 
 (1998) 128 N.C.App. 189 [494 S.E.2d 774, 784].)
 

 As we explain below, we find that the undisputed facts show that Lockheed cannot reasonably expect to make a prima facie showing that an appreciable amount of the Oil site damages was caused by a sudden and accidental intervening event which occurred between the initial disposal of wastes into the Oil landfill and the eventual environmental damages; and, thus, the insurers are entitled to summary adjudication of the duty to indemnify as a matter of law.
 

 D.
 
 Travelers and Continental Are Entitled to Summary Adjudication of Their Duty to Indemnify Lockheed Regarding the OH Site
 

 It is undisputed that the third party claims against Lockheed regarding the Oil site come within the insuring agreements of the Aetna and Harbor policies. To obtain summary adjudication of their duty to indemnify, the insurers are required to establish that the Oil claims are barred by the policies’ pollution exclusion, because the claimed damages arose from the discharge of pollutants onto land or water.
 

 We find that the insurers met their initial burden of establishing that Lockheed’s claim for coverage of the Oil site damages is barred by the pollution exclusion. The undisputed facts show that the Oil claims concern property damage or personal injury which arose from the routine and intentional disposal of industrial wastes by Lockheed and other manufacturers into the Oil landfill. Placement of pollutants into a landfill is, literally, disposal of pollutants onto land.
 
 (Standun, Inc.
 
 v.
 
 Fireman’s Fund Ins. Co., supra, 62
 
 Cal.App.4th at p. 891;
 
 Warwick, supra, 26
 
 F.3d at p. 1205.)
 

 
 *1461
 
 Therefore, a claim for property damage or personal injury arising from the disposal of wastes at the Oil site is barred by the plain language of the pollution exclusion.
 

 Lockheed argues that the Oil site claims focus on groundwater contamination, and that the claims cannot be barred by a pollution exclusion which refers only to disposal of hazardous waste onto land, a watercourse, or a body of water. We reject this argument. As we previously discussed, movement of contaminants from a landfill into groundwater is a form of damage, not a discrete discharge or escape of pollutants. (See, e.g.,
 
 Broderick Inv. Co.
 
 v.
 
 Hartford Acc. & Indem. Co., supra,
 
 954 F.2d at pp. 607-608;
 
 Upjohn Co.
 
 v.
 
 Aetna Cas. and Sur. Co., supra,
 
 850 F.Supp. at p. 1353.)
 

 Having met their initial burden, the insurers are next required to establish that Lockheed cannot reasonably expect to make a prima facie showing that the Oil site damages arose from sudden and accidental discharges of pollution. In their motion for summary adjudication, the insurers pointed to Lockheed’s interrogatory responses as evidence that Lockheed would not be able to make a prima facie showing.
 

 When asked by Aetna’s interrogatories to “identify any releases and discharges at Oil that were not gradual or continuous,” Lockheed responded that releases at the Oil site “could include the 300,000,000 gallons of liquid industrial waste, mixing with the large volumes of residential and commercial refuse, liquid wastes and various hazardous waste disposed of at the Oil site over 36 years of operation.” Lockheed also speculated that “[a]dditional occurrences such as faulty equipment, spills, floods, earthquakes, or fires may have constituted or resulted in releases at the Oil site.”
 

 In its opposition to the motion for summary adjudication, Lockheed did not dispute the insurers’ characterization of its interrogatory response regarding possible sudden and accidental releases at the Oil site as speculative. Such speculation does not overcome the insurers’ proof that the Oil site damages arose from routine, intentional industrial waste dumping. (See
 
 A. Johnson & Co., Inc.
 
 v.
 
 Aetna Cas. and Sur. Co.
 
 (1st Cir. 1991) 933 F.2d 66, 75.) The insurers therefore met their burden to make an affirmative showing that Lockheed cannot reasonably expect to establish that the Oil site claims fall within the sudden and accidental exception to the pollution exclusion.
 

 The burden then shifted to Lockheed to raise a triable question of fact regarding the application of the sudden and accidental exception to the pollution exclusion. At the outset, we reject Lockheed’s argument that the Oil landfill was a place of containment from which toxic substances suddenly and accidentally escaped, causing damage to the surrounding environment. Just as the court found in
 
 Warwick,
 
 “[tjhere is no indication the EPA
 
 *1462
 
 considered the landfill to be a containment vessel from which hazardous substances escaped.” (26 F.3d at p. 1205.) Nor has Lockheed presented any other evidence that the Oil landfill was a kind of containment vessel for industrial waste.
 

 Lockheed also argues that triable questions of fact exist concerning events at the Oil landfill which resulted in sudden and accidental releases into the environment. In its opposition to the motion for summary adjudication, Lockheed submitted additional facts regarding fires and firefighting techniques, heavy rains, and earthquakes which affected the Oil site during the relevant time period. We construe Lockheed’s opposing declarations liberally in order to determine whether any triable issue of material fact exists. (See
 
 D’Amico
 
 v.
 
 Board of Medical Examiners
 
 (1974) 11 Cal.3d 1, 20 [112 Cal.Rptr. 786, 520 P.2d 10].) In doing so, we assume, for purposes of summary adjudication only, that the asserted fires, rains, and earthquakes are possible intervening events rather than merely incidental to routine landfill disposal.
 

 Regarding fires, Lockheed included in its separate statement the additional fact that “[d]uring the entire course of operations at the Oil landfill, three to four fires occurred each year.” Also, “the fire fighting technique of pumping large quantities of water into a hole in the landfill to extinguish a fire would cause any contaminants present in the soil to migrate through the landfill and into the groundwater.”
 

 However, in stating this fact, Lockheed misstated the expert declaration which it attached as supporting evidence. The expert actually reported that, as a result of the firefighting techniques, contamination “could have migrated to groundwater.” Thus, it is clear that Lockheed’s expert was merely
 
 speculating
 
 that fires caused groundwater contamination.
 

 Expert declarations cannot create a triable question of fact if the expert’s opinion is based upon factors which are remote, speculative, or conjectural.
 
 (Leslie G.
 
 v.
 
 Perry & Associates
 
 (1996) 43 Cal.App.4th 472, 487 [50 Cal.Rptr.2d 785].) Particularly, expert declarations regarding purported sudden and accidental releases of pollution, which do no more than offer conclusory assertions or speculation regarding any causal link between the purported releases and the claimed damages, are insufficient to defeat summary adjudication.
 
 (Millipore Corp.
 
 v.
 
 Travelers Indem. Co., supra,
 
 115 F.3d at p. 34;
 
 Aerovox, supra,
 
 676 N.E.2d at pp. 806-807.)
 

 Lockheed’s evidence regarding the possible sudden and accidental release of pollutants due to firefighting techniques is no more than, speculation and cannot create a triable question of fact. Moreover, we find as a
 
 *1463
 
 matter of law that landfill fires that occur on a regular basis (three to four fires per year at the Oil landfill for thirty-six years, according to Lockheed) cannot be considered unexpected, and therefore do not result in accidental discharges of pollutants. Nor can firefighting techniques which purposefully cause an influx of water into the landfill cause an accidental discharge of pollutants.
 
 (Employers Ins. of Wausau
 
 v.
 
 George, supra,
 
 673 N.E.2d 572, 578.)
 

 Lockheed next argues that triable questions fact exist as to whether earthquakes caused sudden and accidental releases of pollutants at the Oil site. In its separate statement of facts, Lockheed states that two documented earthquakes “could have caused ruptures in pipelines” and “[r]eleases from the pipelines may have contributed to the contamination,” based upon expert declarations. Again, no triable question of fact is created by this evidence as it consists solely of speculation regarding possible sudden and accidental releases and possible resulting damage.
 

 Finally, Lockheed offers evidence of heavy rains falling upon the Oil landfill. In its separate statement of facts, Lockheed states that “infiltration of rainfall . . . on or adjacent to the landfill into the subsurface is a major source of. . . leachate movement from the landfill into the adjacent groundwater,” based upon an EPA report. However, the expected natural phenomena of rain falling upon a landfill and causing migration of contaminants cannot constitute sudden and accidental discharge of pollution. As we have discussed, migration of contaminants from a landfill into groundwater is damage, not a discharge.
 
 (Warwick, supra,
 
 26 F.3d at p. 1204.)
 

 Thus, in its opposition to the insurers’ motion for summary adjudication of their duty to indemnify, Lockheed failed to raise any triable questions of fact regarding the application of the sudden and accidental exception to the pollution exclusion. Since the insurers met their dual burden of establishing, as a matter of law, that the third party claims against Lockheed regarding the Oil site damages are barred by the pollution exclusion, and that Lockheed cannot reasonably expect to make a prima facie showing that coverage is restored because the Oil site damages arose from a sudden and accidental discharge of pollution, their motion for summary adjudication should have been granted.
 
 [12]
 

 As our decision regarding the motion for summary adjudication is based upon the merits of the motion, we do not reach the issue raised by the
 
 *1464
 
 insurers as to whether the trial judge’s denial of their motion was error because the ruling did not follow the previous rulings of a different trial court judge on similar motions.
 

 Disposition
 

 Let a peremptory writ of mandate issue directing respondent court to vacate its order of August 8, 1997, denying the motion of Travelers Casualty and Surety Company and Continental Insurance Company for summary adjudication of the sixth cause of action for declaratory judgment/duty to indemnify re Oil site, and the seventh cause of action for breach of contract/ duty to indemnify re Oil site, of the fifth amended cross-complaint, and to enter a new and different order granting the motion. Each party to bear its own costs in this writ proceeding.
 

 Elia, J., and Wunderlich, J., concurred.
 

 The petition of real party in interest for review by the Supreme Court was denied September 16, 1998. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.
 

 [1]
 

 We granted the applications of London Market Insurers to file an amicus curiae petition and an amicus curiae reply brief in support of the petition for writ of mandate.
 

 [2]
 

 For ease of reference, petitioners Travelers Casualty and Surety Company, formerly Aetna, and Continental Insurance Company, successor in interest to Harbor, are hereafter referred to collectively as the “insurers.”
 

 [3]
 

 Lockheed alleges in its cross-complaint that Aetna issued the following policies to Lockheed: No. 33GL13SRA (Apr. 1, 1979, to Apr. 1, 1980); No. 83GL59507SRA (Apr. 1, 1980, to Apr. 1, 1981); No. 83GL59523SRA (Apr. 1, 1981, to Apr. 1, 1982); No. 83GL60137SRA (Apr. 1, 1982, to Apr. 1, 1983); No. 83GL60157SRA (Apr. 1, 1983, to Apr. 1, 1984); and No. 83GL60186SRA (Apr. 1, 1984, to Apr. 1, 1985).
 

 [4]
 

 Lockheed alleges that the following Harbor policies were issued to Lockheed: No. 107080 (Jan. 1, 1969, to Jan. 1, 1970); No. 108380 (Jan. 1, 1970, to Jan. 1, 1971); No. 110142 (Jan. 1, 1971, to Mar. 1, 1972); No. 112314 (Mar. 1, 1972, to Mar. 1, 1975); No. 121010 (Mar. 1, 1975, to Mar. 1, 1977); and No. GLA010438 (Mar. 1, 1977, to Mar. 1, 1978).
 

 [5]
 

 The Harbor policies included a slightly different form of the pollution exclusion: “This insurance does not cover any liability for: . . . Personal injury or bodily injury or loss of, damage to, or loss of use of property directly or indirectly caused by seepage, pollution or contamination, provided always that this paragraph (I) shall not apply to liability for personal injury or bodily injury or loss of or physical damage to or destruction of tangible property, or loss of use of property damaged or destroyed, where such seepage, pollution or contamination is caused by a sudden, unintended and unexpected happening during the period of insurance.”
 

 [6]
 

 Further statutory references are to the Code of Civil Procedure unless otherwise noted.
 

 [7]
 

 Although not necessary for resolution of this matter, we would also find an excerpt of the policy definitions to be of assistance to the court.
 

 [8]
 

 The decision in
 
 Standun Inc.
 
 v.
 
 Fireman’s Fund Ins. Co., supra,
 
 62 Cal.App.4th 882, also involved the Oil site. Summary judgment in favor of the insurer, Fireman’s Fund Insurance Company, on the duty to defend was affirmed.
 

 [9]
 

 The courts of Wisconsin, New Jersey, and Texas also focus on the movement of pollutants from the disposal site into the environment, based upon their ruling that “sudden and accidental” means “unexpected” and “unintended,” without a temporal component. (See
 
 Morton Intern., Inc.
 
 v.
 
 General Acc. Ins. Co.
 
 (1993) 134 N.J. 1 [629 A.2d 831, 862];
 
 Fortier
 
 v.
 
 Flambeau Plastics Co.
 
 (1991) 164 Wis.2d 639 [476 N.W.2d 593];
 
 Union Pac. Resources
 
 v.
 
 Aetna Cas. & Sur.
 
 (Tex.App. 1994) 894 S.W.2d 401, 404; see Abraham,
 
 The Maze of Mega-Coverage Litigation
 
 (1997) 97 Colum. L.Rev. 2102, 2109 [discussing the “sharp division among the states”].)
 

 [10]
 

 Our discussion of
 
 Queen City Farms, supra,
 
 882 P.2d 703 in
 
 FMC Corp.
 
 is limited to agreement with the Washington Supreme Court’s ruling that the phrase “unexpectedly and unintentionally” is an integral part of the “occurrence” definition in a commercial or comprehensive general liability policy.
 
 {FMC Corp., supra,
 
 61 Cal.App.4th at p. 1159.)
 

 [11]
 

 The North Carolina Supreme Court observed: “Courts that have construed ‘sudden’ broadly, defining it in terms of the expectation element of accident rather than focusing on its temporal significance, have deemed polluting events excepted that otherwise appear to fit squarely within the exclusion. . . . [¶] Other courts, which have read ‘suddenly’ temporally, as describing an abrupt or precipitant event, have made more logical distinctions between releases that occur suddenly and accidentally and releases that do not.”
 
 (Waste Management
 
 v.
 
 Peerless Ins. Co.
 
 (1986) 315 N.C. 688 [340 S.E.2d 374, 382].)
 

 [12]
 

 Aetna objected to the admissibility of Lockheed’s expert declarations. We do not reach this evidentiary issue because we find as a matter of law that no triable questions of fact are created by the expert declarations, even if they are deemed admissible evidence.