Filed 7/8/13  Sasser v. Allstate Ins. Co. CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JAKE SASSER, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY, <br><br>     Defendant and Respondent. | A131906, A132887, & A133538 <br><br> (Alameda County <br> Super. Ct. No. RG 08386735) |

In May 2007, a house owned by appellant Jake Sasser suffered fire damage.  The property was covered by an insurance policy issued to Sasser by respondent Allstate Insurance Company (Allstate), and Sasser filed a claim for the damage to the property. Allstate denied Sasser's claim on the basis that his loss was the result of vandalism, a type of loss subject to a policy exclusion.

Sasser sued, asserting seven causes of action.  Allstate moved for summary judgment or, alternatively, summary adjudication, and the trial court granted summary adjudication on six of the claims, all but that for breach of contract.  The case then proceeded to trial on the one remaining cause of action.  After brief deliberations, the jury returned a verdict in Allstate's favor.

After the trial, Allstate filed a cost bill seeking over $25,000 in costs, and the trial court allowed most of the costs under Code of Civil Procedure section 1032.  Also after trial, Allstate filed a motion under Code of Civil Procedure section 2033.420 to recover the legal fees it incurred in proving the truth of admission requests Sasser had denied

1

during the course of discovery. The court ultimately granted Allstate's motion in part, awarding it $25,000 in connection with Sasser's denial of one request for admission.

Sasser filed three appeals, from the judgment, the cost award, and the attorney fee award. His primary appeal, from the judgment, essentially asserts four errors by the trial court: (1) granting summary adjudication on Sasser's "bad faith" claim; (2) its interpretation of the Allstate policy; (3) its instructions to the jury; and (4) its approval of the special verdict form provided the jury. Allstate "protectively" cross-appeals the jury's finding that it did not prove that the fire resulted from vandalism because, it claims, Sasser had admitted that arson caused the fire. We disagree with Sasser's first claim, but agree with his claim of prejudicial error in the jury instructions. We thus reverse the judgment for Allstate and vacate the award of costs. We affirm the attorney fee award.

## BACKGROUND

### The Facts

Beginning in about 1992 Sasser and his wife (since deceased) owned the house at 7921 Holly Street in Oakland, and regularly rented it out to tenants. Apparently in May 2005, Sasser evicted his final tenants for nonpayment of rent. When they departed, they took all the furnishings, leaving the house substantially empty save for several pieces of allegedly "junk" furniture. Sasser was unsuccessful in his efforts to rent the property, and it remained vacant. Sasser had a chain-link fence erected around the property "to keep vandals out," to no avail: in the two years between the departure of the last tenant and the 2007 fire, Sasser learned that the property had been entered at least twice without his permission.

During this period of time, more specifically, beginning in March 2004, Sasser contracted with Allstate to insure the Holly Street property under a "Landlords Package Policy," which policy was in effect at the time of the fire. Policy form AP529 specified the policy's coverage provisions and exclusions, and provided "Dwelling Protection" coverage. One provision of that form, entitled "Losses We Cover Under Coverages A and B," stated as follows: "We will cover sudden and accidental direct physical loss to

2

property described in Coverage A–Dwelling Protection and Coverage B–Other Structures Protection except as limited or excluded in this policy."

Under the title "Losses We Do Not Cover Under Coverages A and B," the policy continued: "We do not cover loss to property described in Coverage A or Coverage B—Dwelling Protection or Other Structures Protection when [consisting of or caused by]: [¶] . . . [¶] 20. Vandalism. However, we do cover sudden and accidental direct physical loss caused by fire resulting from vandalism unless your dwelling had been vacant or unoccupied for more than 90 consecutive days immediately prior to the vandalism."[1] The policy had earlier defined "vandalism" as "willful or malicious conduct resulting in damage or destruction of property."

In May 2007 a fire occurred at the property, destroying the front bedroom area and damaging other portions of the house. Sasser reported this loss to Allstate, and it assigned adjuster Stanley Eisen to handle the claim. Sasser told Eisen that the property had been vacant for approximately two years.

Via Eisen, Allstate retained EFI Global, a company specializing in fire cause investigation, and EFI assigned one of its senior fire investigators, George Alboff, to determine the cause and origin of the fire. He undertook such an investigation and on June 7 submitted a report in which he concluded that "the fire was intentionally set and most likely accelerated with a fuel form such as a flammable liquid." After reviewing this report, on June 22, Eisen wrote Sasser advising him that the vandalism exception in the policy precluded coverage for the fire damage to the property.

During the subsequent litigation, Sasser retained two individuals who examined the EFI report and opined that its investigation was not thorough and undertaken and completed too quickly. One of those investigators, Steven Carman, visited the Holly Street property in 2010 and, in January 2011 submitted a report to the effect that EFI's findings did not support its opinion that arson had been committed.

---

[1] At trial, Sasser testified that he never received a complete set of the policy and thus had no knowledge of this exclusion.

**The Proceedings Below**

In May 2008, Sasser filed suit against Allstate regarding its denial of his claim.[2] After several motions and amendments, the operative pleading was the second amended complaint, which asserted seven causes of action against Allstate, for: (1) breach of contract, (2) negligence, (3) bad faith, (4) intentional infliction of emotional distress, (5) misrepresentation, (6) negligent misrepresentation, and (7) negligent infliction of emotional distress.

In April 2010, after discovery had been taken, Allstate moved for summary judgment or, alternatively, summary adjudication. Sasser opposed the motion and, following Allstate's reply, the trial court heard oral argument on October 14, 2010. On November 1, 2010, the court granted Allstate summary adjudication on all of Sasser's causes of action except the first, for breach of contract. Sasser moved for reconsideration of the trial court's ruling, which was denied, and the case proceeded to trial on Sasser's breach of contract claim.

On February 9, 2011, the trial court granted Allstate's motion to bifurcate the trial, to try first the issue of whether Allstate's policy covered the fire damage to Sasser's property. That trial commenced on February 28. As discussed further below, Sasser and the expert retained by him, Steven Carman, testified concerning their beliefs regarding the cause of the fire. Allstate also presented evidence on that issue from two witnesses, one an expert retained by it and another an investigator employed by EFI.

Following the presentation of evidence, a process that consumed six days, the trial court presented the jury with a special verdict form containing six questions. On March 7, after only a few hours of deliberation, the jury returned its verdict. It found that, although Sasser had established that a contract existed between him and Allstate, he had failed to "prove by a preponderance of the evidence" that (1) the fire at the property

---

[2] The suit was actually filed by both Sasser and his wife, who passed away during the course of the action. The complaint also named as defendants Allstate agent Russ Nott and Eisen, the adjuster handling the claim. Both individuals were later dismissed from the action.

4

"was a sudden and accidental direct physical loss," (2) so that an "exception to the vandalism exclusion applies," (3) the Holly Street property "was not vacant for more than 90 consecutive days immediately prior to the fire," or (4) that the property "was not unoccupied for more than 90 consecutive days prior to the fire." The jury also found that Allstate had not proven that the fire resulted from vandalism.

Sasser moved for a new trial and also to set aside and vacate the judgment. Allstate moved for partial judgment notwithstanding the verdict. The trial court heard oral argument on both motions on April 19 and on April 21 denied both parties' posttrial motions. Sasser filed a notice of appeal on May 2, and Allstate its notice on May 20.

Following the trial, Allstate filed a cost bill seeking over $25,000 in costs. Sasser contested the award, and by order of July 25, 2011, the trial court allowed most of the costs, and on August 9, 2011, Sasser filed an appeal from this order.

Following the trial, Allstate also filed a motion under Code of Civil Procedure section 2033.420 (section 2033.420) to recover the legal fees it incurred in proving the truth of admission requests Sasser had denied during the course of discovery. The trial court awarded Allstate $25,000, and Sasser filed a notice of appeal from this order on October 24, 2011. An order consolidating these appeals will issue simultaneously with this opinion.

## DISCUSSION

### Introduction: Issues Presented and our Standards of Review

The parties differ somewhat in their identification of the issues presented on the appeal from the judgment. They agree on three issues, whether the trial court: (1) erred in granting Allstate's motion for summary adjudication on Sasser's claim for breach of the covenant of good faith and fair dealing; (2) correctly determined that Sasser was required to establish that the fire damage to his property fell within the terms of the Allstate policy; and (3) correctly instructed the jury as to the meaning of the term "accidental" in that policy. Sasser correctly adds a fourth issue, namely whether the special verdict form submitted to the jury by the court was "inconsistent," and the verdict was thus "defective."

5

The parties agree regarding our standards of review of these issues: all of them should be reviewed de novo, i.e., they essentially present issues of law. We agree with this, as such a standard is applicable to the issues involved in this appeal. (See, e.g., *Monticello Ins. Co. v. Essex Ins. Co.* (2008) 162 Cal.App.4th 1376, 1384-1385 [summary adjudication]; *Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 389-391 [interpretation of the provisions in insurance policies]; *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 82 [jury instructions]; and *Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092 [special verdicts].)

**The Trial Court Did Not Err in Granting Allstate's Motion for Summary Adjudication of Sasser's Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing**

Sasser first argues that the trial court erred in granting summary adjudication of his cause of action for breach of the covenant of good faith and fair dealing. We disagree.

In its ruling, and after summarizing the applicable law, the trial court stated: "Allstate's denial of the instant claim was based upon its reliance on its forensic expert, who concluded that the fire was due to arson committed by vandals or trespassers, and because the property was vacant in excess of 90 days. Plaintiff initially admitted that the property had been vacant for over two years prior to the fire and initially agreed with that the fire was caused by arson. [Citation.] Plaintiff's counsel argues that Allstate's denial was in bad faith because the investigation performed by Allstate's forensic expert was not sufficiently thorough and was based solely on the fact that the property was vacant and Plaintiffs are elderly persons of color. There is a complete absence of evidence to support the claims that the denial was based solely upon Plaintiff's race and age, or due to the fact (undisputed) that the property was vacant at and before the time of the fire. While Plaintiff disagrees with the conclusion reached in the EFI Report, Defendant's reliance on that report was not on its face unreasonable or arbitrary. Plaintiff has not raised a triable issue of fact that Allstate's denial of coverage was unreasonable or without proper purpose."

6

Our de novo review leads to the same conclusion.

In *Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60 (*Nieto*), the court stated: "As summarized in *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 345 ' " 'breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself,' and it has been held that ' "[b]ad faith implies unfair dealing rather than mistaken judgment. . . ." [Citation.]' [Citation.]" [Citation.]' Thus, an insurers' bad judgment or negligence is insufficient to establish bad faith; instead, the insurer must engage in ' "a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." ' (*Id.* at p. 346.) The ultimate test is whether the insurer's conduct was unreasonable. (*Ibid.*; accord, *Gourley v. State Farm Mut. Auto. Ins. Co.* (1991) 53 Cal.3d 121, 127; *Nager v. Allstate Ins. Co.* (2000) 83 Cal.App.4th 284, 288.) 'While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence. [Citation.]' (*Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.*, *supra*, at p. 346; *Carlton v. St. Paul Mercury Ins. Co.* (1994) 30 Cal.App.4th 1450, 1456.) [¶] As aptly stated in *Nager v. Allstate Ins. Co.*, *supra*, 83 Cal.App.4th at page 288: 'Not every first party insurance claim is transmogrified into a bad faith suit simply because an insurer questions the amount of a bill before paying it. To give rise to tort liability for bad faith, the insurer's conduct not only must be erroneous but 'unreasonable' or 'without proper cause' as well. [Citations.].' " (*Nieto, supra,* 181 Cal.App.4th at p. 86.)

*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395, an authority relied upon by the trial court, is similar: "Thus, allegations which assert . . . a claim [of breach of the covenant of good faith and fair dealing] must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual

responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." (See also, to the same effect, *Fraley v. Allstate Ins. Co.* (2000) 81 Cal.App.4th 1282, 1291–1292 and *Bionghi v. Metropolitan Water Dist.* (1999) 70 Cal.App.4th 1358, 1370.)

In his briefs to us, Sasser argues that this law is not applicable here because Allstate did not "fully inquire" into the cause of the fire but, instead, dismissed Sasser's claim "summarily." He continues that Allstate "did not refute" his claim that its "investigation was not adequate" but instead argued that it had "a right to rely on their expert." More specifically, Sasser contends that a September 2010 declaration of his expert, Steven Carmen, had concluded that EFI's report was neither "persuasive" nor "reasonable" and, as a consequence, the cause of the fire was "inexplicable because there was insufficient evidence to determine its cause." Finally, Sasser argues that the July 2010 declaration of another reputed expert he retained regarding the cause of the fire, one Barry Cramer, was entitled to more credit by the trial court because Cramer had opined that the EFI report "was inadequate as an investigation."

We reject these contentions. First and foremost, they are purely argument. At no time did Sasser present any evidence regarding the alleged bias or inadequacy of the EFI report commissioned by Allstate. Indeed, in his briefs to us, he cites no such evidence.[3] Further, no declaration by Cramer is included in Sasser's appendix filed with this court and, according to pleadings filed by Allstate in support of its motion for summary adjudication, Cramer never even visited the Holly Street property.[4]

---

[3] The closest Sasser comes to this is in one line of his reply brief where he argues: "Lastly, the summary judgment court ignored evidentiary facts to which [*sic*] a jury must hear." But in the subsequent pages of that brief where this argument is briefly expanded on, Sasser cites no such "evidentiary facts," but only Allstate's "focuses" and its arguments in its brief to this court.

[4] In his opening brief, Sasser references a declaration he submitted to the trial court from another alleged expert retained by him, Steve Carman. The trial court

In short, Sasser's failure to introduce any evidence of deliberate action by Allstate to frustrate the purpose and intent of the insurance contract in effect between the parties clearly justifies the trial court's grant of summary adjudication of Sasser's cause of action for breach of the covenant of good faith and fair dealing. Or to put it conversely, Sasser raises no triable issue of material fact on this claim.

**The Trial Court Erred in Its Instructions, Which Error Was Prejudicial**

Sasser contends that he had secured an "all risk" policy from Allstate and that, therefore, the trial court erred in (1) interpreting it differently and (2) based on that interpretation, giving the jury an instruction which stated that Sasser had "the initial burden of establishing by a preponderance of the evidence that the fire loss was covered by the insurance contract. To meet this burden here, Mr. Sasser must prove the fire loss was a 'sudden and accidental direct physical loss to property' covered by the insurance contract with Allstate. If you find that the fire loss was not a 'sudden and accidental direct physical loss' to Mr. Sasser's rental dwelling, you must find for Allstate." Sasser argues that this instruction was incorrect, because it "reversed the burden of proof for an insured with all perils policy."

We begin with the observation that Sasser is correct in his contention regarding the nature of the Allstate policy: it is an all-risk policy since, by its terms, it covered "sudden and accidental direct physical loss to property . . . except as limited or excluded in this policy." (See, e.g., *Benavides v. State Farm Gen. Ins. Co.* (2006) 136 Cal.App.4th 1241, 1247; see also Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2012) § 6:250.) While it is true that "[u]nder an 'all risk' policy, the insured has the threshold burden of proving a loss within the insuring clause," as Justice Croskey's treatise points out, "[t]he burden on the insured in this situation is usually minimal." (Croskey et al., *supra,* § 6:253.1.) But the instructions given by the trial court on the

---

correctly did not consider this proffered evidence because it was not timely filed and Sasser did not seek permission from the trial court to file it belatedly.

subject made Sasser's task more than minimal. Given the facts here, it made it impossible.

The first relevant instruction the trial court gave the jury on this issue was no. 17, which read: "Mr. Sasser bears the initial burden of establishing by a preponderance of the evidence that the fire loss was covered under the insurance contract. [¶] To meet this burden here, Mr. Sasser must prove the fire loss was a 'sudden and accidental physical loss to property' covered by the insurance contract with Allstate. If you find that the fire loss was not a 'sudden and accidental direct physical loss' to Mr. Sasser's rental dwelling, you must find for Allstate."[5]

Then followed the trial court's special instruction no. 18, entitled "Definition of Sudden and Accidental," which told the jury that "An 'accidental event' is one that is unexpected and unintended. A purposeful act is not an 'accident.' [¶] A 'sudden' event is one that is abrupt or immediate in nature."

Sasser argues that the phrase "a purposeful act is not an accident" was both legally incorrect and prejudicial to him. More specifically, he contends that that phrase "made the definition [of the term 'accidental] ambiguous because it mean accidental was now possibly an act or an 'accident,' opposed to an adjective in that the loss was unintended or not expected by the insured." Sasser also argues that this instruction was contrary to the law as set forth in *American Alternative Ins. Corp. v. Superior Court* (2006) 135 Cal.App.4th 1239, 1246 (*American Alternative*), and that Allstate's trial counsel seized on this instruction to argue to the jury that, under it, Sasser had failed to bear his burden of proving "that the fire at the dwelling was sudden and accidental."

---

[5] In the trial court, Sasser's counsel—at least preliminarily—objected to this instruction. The next trial day she appeared to continue this argument, and asked the court if it was "saying that if he doesn't prove he had a sudden and accidental direct physical loss, you must find for Allstate." The trial court responded that "as a matter of irony, when I went looking through your instructions this weekend, under the case notes of one of them, is what I've been saying for a week here which is you got to get coverage first before you get to the exclusion and the burden is on the plaintiff." To which Sasser's counsel responded: "Okay. That's fine."

10

We conclude that this instruction was erroneous, because it did not tell the jury that the "unintended and unexpected" must be *from the standpoint of the insured.* (See, e.g., *Reichert v. State Farm General Ins. Co.* (2012) 212 Cal.App.4th 1543, 1547; *MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.* (2010) 187 Cal.App.4th 766, 782-784; *American Alternatives, supra,* 135 Cal.App.4th 1239, 1249; Croskey et al., *supra*, § 6.275.1, p. 6B-32.)

Following oral argument, we asked the parties for supplemental briefing on this issue. Allstate's position is that from the "standpoint of the insured" is not necessary because, it asserts, there is a "plethora of California decisions [that] support the definition of accidental in that jury instruction." Hardly.

The two cases cited by Allstate in claimed support—*St. Paul Fire & Marine Ins.Co. v. Superior Court* (1984) 161 Cal.App.3d 1199 and *Collin v. American Empire Ins. Co.* (1994) 21 Cal.App.4th 787—both involve liability insurance policies, and the effect of the insured's conduct on the duty to defend. These cases have no applicability here. As our colleagues in Division Three have expressly noted, "[f]irst party coverage for damage to the insured's own property is not the same as third party liability coverage and should be treated differently." (*Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 765 (*Shell Oil*); see generally, *Garvey v. State Farm Fire & Cas. Co.* (1989) 48 Cal.3d 395, 405-408.)

The trial court labored under the same misapprehension, noting in the course of settling the instruction at issue that "we're both kind of stuck with [*Aydin*] and its progeny in terms of their using sudden and accidental the way they used it." The case referred to, *Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, involved a "standard commercial general liability insurance policy." (*Id.* at p. 1185.) And in it the Supreme Court, too, noted the distinction from first party policies: "Like *Bebbington* [*v. California Western States Life Ins. Co.* (1947) 30 Cal.2d 157], *Strubble* [*v. United Services Auto Assn.* (1973) 35 Cal.App.3d 498] is not instructive here. The *Strubble* court emphasized that its holding applied only to all-risks insurance policies, explaining that 'in an action upon an all-risks policy such as the one before us (unlike a specific peril

11

policy), the insured does not have to prove that the peril proximately causing his loss was covered by the policy. This is because the policy covers *all risks* save for those risks specifically excluded by the policy.' (*Strubble, supra,* 35 Cal. App. 3d at p. 504, original italics.) Under a comprehensive general liability insurance policy such as the one at issue here, by contrast, the insured clearly bears the burden of establishing coverage. [Citation.]" (*Aydin Corp. v. First State Ins. Co., supra,* 18 Cal.4th at p. 1190.)

We close with the observation, self-evident though it may be, that arson is necessarily an intentional act. It is not "unexpected and unintended." Put conversely, arson is not accidental. The significance of this, of course, is the instruction given by the trial court would mean that an insured—however innocent he or she might be—could never recover for a fire set by a third party. The law, of course, is contrary, as confirmed by a leading commentator: "It is clear that arson without actual or imputed involvement of the insured is compensable under the policy. Therefore, a defense of arson or willful burning will not operate to defeat recovery under a fire insurance policy where there has been no finding of knowledge, authorization, or ratification of such burning by the insured." (10A, Couch on Ins. 3d (2005) § 149.54, p. 149-76, and numerous cases there collected; also see *Watts v. Farmers Ins. Exchange* (2002) 98 Cal.App.4th 1246, 1261 [fraud by co-insured; innocent co-insured allowed to recover for proportionate share of damaged property].)

As alluded to above (see fn. 5), Sasser's counsel did not request the precise language required by the cases, which raises the next question: whether Sasser is foreclosed from rising the issue now. We conclude he is not. *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 951, disapproved on other grounds in *White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 574, fn. 4, noted that while "there ordinarily is no duty to instruct in the absence of a specific request by a party," an exception "is a complete failure to instruct on material issues and controlling legal principles which may amount to reversible error." As Witkin distills the rule, "it is the duty of the court to see that jurors are guided on controlling legal principles, and the complete failure to instruct properly on a basic issue may be reversible error." (7 Witkin, Cal. Procedure (5th ed. 2008) Trial, § 261, p. 315;

12

see also *Hensley v. McSweeney* (2001) 90 Cal.App.4th 1081, 1086 [trial court has "independent duty to instruct the jury correctly"]; *Lysick v. Walcom* (1968) 258 Cal.App.2d 136, 157 [trial court should have instructed the jury that negligence was established as a matter of law]; *Thomas v. Buttress & McClellan* (1956) 141 Cal.App.2d 812, 819 [trial court had sua sponte duty to instruct jury as to correct measure of damages]; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2012) §§ 14:41–14:43, pp. 14-11–14-12.)

The final question on this issue is whether the error was prejudicial. We conclude it was. We recently collected the law in *Veronese v. Lucasfilm Ltd.* (2012) 212 Cal.App.4th 1, 30-31:

" ' "[T]here is no rule of automatic reversal or 'inherent' prejudice applicable to any category of civil instructional error, whether of commission or omission. A judgment may not be reversed for instructional error in a civil case 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.) . . ." (*Soule v. General Motors Corp.* [(1994)] 8 Cal.4th [584,] 580 (*Soule*).)

" '. . . "Instructional error in a civil case is prejudicial 'where it seems probable' that the error 'prejudicially affected the verdict.' [Citations.]" (*Soule, supra,* 8 Cal.4th at p. 580; accord, *Ted Jacob Engineering Group, Inc. v. The Ratcliff Architects* [(2010)] 187 Cal.App.4th [945,] 961.) In assessing whether a "miscarriage of justice" has occurred, "[t]he reviewing court should consider not only the nature of the error, 'including its natural and probable effect on a party's ability to place his full case before the jury,' but the likelihood of actual prejudice as reflected in the individual trial record, taking into account '(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled' [Citation.]" [Citations.]' "

Such a miscarriage of justice occurred here.

It is probably enough to note that, as indicated above, the instruction essentially told the jury that Sasser could not prevail if the fire was arson. Beyond that, a review of

13

Allstate's counsel's closing argument reveals that he devoted a significant portion of his closing argument to demonstrating that the "fire was not accidental." Pages and pages of argument followed, argument that included the following:

"Let's take a look at the second question that you are going to have to answer. The second question says, did Mr. Sasser prove by a preponderance of the evidence that the fire at his rental dwelling was a sudden and accidental direct physical loss? . . .

"Accidental doesn't just mean unintended. As Judge McGuiness instructed you, a purposeful act is not an accident. That's also part of the definition of accidental, and you will see that when you get back into the jury room if you look at the particular jury instruction.

"The point is, as you have this as a special verdict question, this has to be proven, and it's Mr. Sasser who bears the burden to prove that the fire at the dwelling was sudden and accidental.

"I told you a week ago Allstate doesn't dispute it was a sudden fire, but I think that all the evidence proves it wasn't accidental. You heard and saw a lot of evidence about the cause of the fire, but there wasn't one document and there wasn't one bit of testimony that supported the notion that the fire was accidental, quite the contrary. You heard detailed testimony from Mr. Alboff and Mr. Hasegawa who both told you the fire was intentionally set. They told you it was arson." And on it went, counsel concluding that, in light of "all the evidence, Mr. Sasser cannot prove, as he must, that the fire was accidental, and therefore we think the only answer to question no. 2 is no."

Again, an observation by Division Three in *Shell Oil, supra,* 12 Cal.App.4th at p. 772 is apt: "Rereading or emphasizing the language of an incorrect instruction enhances the likelihood of prejudice. (*Bolen v. Woo* (1979) 96 Cal.App.3d 944, 952-953.) Similarly, emphasizing evidence supporting the claim or defense covered by the instruction is likely to mislead the jury. (*Mitchell v. Gonzales*[(1991)] 54 Cal.3d [1041,] 1054–1055.) The insurers' counsel did both in their closing arguments. Thus,

14

the second *LeMons*[6] factor—whether the insurers' jury arguments contributed to the instructions' misleading effect—suggests that the incorrect instructions prejudiced Shell on the affected issues."  Likewise here.  Indeed, as indicated above, the answer to question no. 2 had to be "no," because arson fires are per se not "accidental."[7]

### The Award of Costs Must Be Reversed

Following the trial, Allstate filed a cost bill seeking over $25,000 in costs.  Sasser field a motion to tax the award, the trial court allowed most of the costs, and Sasser appealed.  Since the cost award is dependent on Allstate being the prevailing party, and since we have reversed the judgment, the cost award falls with it.

### The Trial Court Did Not Abuse Its Discretion in Awarding Attorney Fees to Prove Up a Denied Request for Admission

During the litigation, both parties engaged in substantial discovery.  That discovery included two sets of requests for admission served by Allstate.  Request for Admission No. 17 in the January 8, 2010, set of requests read:  "Admit ALLSTATE did not act negligently, as alleged in the COMPLAINT."  On February 3, 2010, Sasser responded to the admission requests, which response included an unqualified denial of Allstate's request No. 17.

As noted, the trial court granted Allstate summary adjudication on six of Sasser's seven causes of action, one of which was Sasser's second cause of action.  In its ruling, the trial court quoted one of our sister courts, which had held that " '[n]egligence is not among the theories of recovery generally available against insurers' for alleged wrongful denial of coverage."  (Quoting in part from *Sanchez v. Lindsey Morden Claims Services, Inc.* (1999) 72 Cal.App.4th 249, 254.)  A few sentences later, it concluded its ruling on that cause of action by stating:  "Plaintiff has not asserted a theory of relief sounding in negligence."

---

[6] *LeMons v. Regents of California* (1978) 21 Cal.3d 869.

[7] The result we reach here necessarily means that the jury verdict form submitted to the jury was incorrect.  We thus need not reach Sasser's argument on the verdict forms and trust that on any retrial the verdict form will be corrected as appropriate.

15

Following the trial and judgment in its favor, Allstate filed a motion under Code of Civil Procedure section 2033.420 (section 2033.420) to recover the legal fees it incurred in proving the truth of admission requests Sasser had denied during the course of discovery. Sasser filed opposition to this motion, and following a hearing the trial court issued an order setting a further briefing schedule on Allstate's request for fees. Allstate submitted supplemental briefing and a declaration regarding the fees it allegedly incurred between the date of Sasser's denial of its requests for admission through the date of the granting of summary adjudication, claiming that it had incurred over $131,000 in attorney fees during that period.[8] Sasser filed a brief reply to Allstate's request for fees and a supporting declaration of counsel.

On October 10, 2011, the trial court granted Allstate's motion for attorney fees, albeit only in part, i.e., for the sum of $25,000, and only in connection with Sasser's denial of Allstate's request for admission no. 17. In granting that portion of Allstate's request for attorney fees, the trial court specifically noted that the trial court judge who granted Allstate's motion for summary adjudication observed that "negligence is not a theory of recovery which insureds can generally assert against their insurers for coverage denials." The court then went on to rule: "The court has reviewed the case history; the discovery motions and orders; their nature and timing; the parties' submissions in support of and in opposition to Allstate's motion for summary judgment; listened to the evidence at trial submitted by each party and taken the jury's verdict here and each party's argument and opposition to the relief requested and orders as follows: [¶] Code of Civil Procedure section 2033.420 sanctions are denied as to Requests for Admissions Nos. 16, 18, 19, 20, 21, 22, 23 and 24 pursuant to Code of Civil Procedure section 2033.420(b)(3) and (4). [¶] As to Request for Admission No. 17, however, the court finds that Code of

---

[8] As it notes in its brief to us, Allstate actually asked for much more, i.e., *all* of the attorney fees it incurred from the time Sasser denied his requests for admission to the conclusion of the trial. At the hearing on Allstate's motion for fees, however, the trial court specifically stated that it would consider granting Allstate attorney fees only (1) for the expenses incurred during the time between Sasser's responses and the court's summary adjudication ruling, and (2) regarding the claims disposed of via that ruling.

16

Civil Procedure section 2033.420 sanctions are appropriate. Again, based upon the court's review of the entire record here (excepting trial) it finds that an award of $25,000 out of the total of approximately $131,000 incurred during the relevant time period is a reasonable amount expended in establishing the matters at issue here. [¶] Allstate shall therefore be entitled to recover $25,000 from plaintiff."

The relevant statute, section 2033.420 (formerly section 2033, subdivision (o)) provides:

"(a) If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under this chapter, and if the party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees.

"(b) The court shall make this order unless it finds any of the following: [¶] (1) An objection to the request was sustained or a response to it was waived under Section 2033.290. [¶] (2) The admission sought was of no substantial importance. [¶] (3) The party failing to make the admission had reasonable ground to believe that that party would prevail on the matter. [¶] (4) There was other good reason for the failure to admit." (§ 2033.420.)

Our standard of review of an order granting attorney fees under section 2033.420 is abuse of discretion. (See, e.g., *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1275-1276 (*Laabs*); *Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 637, fn. 10 (*Wimberly*).)[9] There is nothing unusual about this, as the general standard of

---

[9] In his opening brief, Sasser cites *Wimberly* as claimed authority for the proposition that the applicable standard of review is "de novo on appeal." This statement is simply wrong, as are Sasser's other citations of authority in the same paragraph. In his reply brief, Sasser concedes his mis-citation, but then argues that his claimed standard of review is supported by *Barnett v. Penske Truck Leasing Co.* (2001) 90 Cal.App.4th 494, 497 (*Barnett*), where the court stated: "Whether reasonable expenses incurred are recoverable pursuant to [Code of Civil Procedure] section 2033, subdivision (o),

17

review regarding an award of attorney fees for a procedural misstep by a litigant—especially when, as here, such is specifically addressed in a statute—is abuse of discretion. (See Eisenberg et al., Cal. Practice Guide (The Rutter Group 2012) Civil Appeals & Writs, §§ 8:94.2-8:94.3.)

The recent decision by the *Laabs* court explained: "Under Code of Civil Procedure section 2033.420, a party that denies a request for admission may be ordered to pay the costs and fees incurred by the requesting party in proving that matter. The court 'shall' order the payment of such fees and costs unless it finds: (1) that an objection to the request was sustained or a response to the request was waived; (2) the admission sought was of no substantial importance; (3) the party failing to make the admission had reasonable ground to believe that the party would prevail on the matter; or (4) there was other good reason for the failure to admit the request. (Code Civ. Proc., § 2033.420, subd. (b).) [¶] . . . [¶] A request for admission has 'substantial importance when the matter requested for admission [is] central to disposition of the case.' [Citation.] [¶] In evaluating whether a 'good reason' exists for denying a request to admit, 'a court may properly consider whether at the time the denial was made the party making the denial held a reasonably entertained good faith belief that the party would prevail on the issue at trial.' [Citation.]" (*Laabs, supra,* 163 Cal.App.4th at p. 1276.)

We find no abuse of discretion in the trial court's ruling awarding Allstate $25,000 (out of the over $131,000 it sought) in attorney fees.

Although the trial court granted Allstate's motion for summary adjudication as to six of his seven causes of action (including his second cause of action for negligence), in

---

following entry of summary judgment is a question of law reviewed de novo on appeal. (See *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal. 3d 881, 888. Whether the award of expenses was warranted in this case is reviewed for abuse of discretion. (*Wimberly v. Derby Cycle Corp.*[*, supra,*] 56 Cal. App. 4th [at p.] 637, fn. 10.)." This statement by the *Barnett* court is correct, but Sasser's reliance on it is not. The application of section 2033.420 to both the request for admission and its denial by Sasser has not been put in issue by anything in the record or in Sasser's briefs to us. The only thing at issue is the trial court's decision to award Allstate $25,000 in attorney fees pursuant to it.

his appeal on the merits Sasser appealed *only* from the trial court's grant of summary adjudication on his claim for breach of the covenant of good faith and fair dealing. And, as the language of section 2033.420 makes clear, Allstate was entitled to an award of attorney fees if its alleged negligence was not and could not be proven by Sasser, *unless* one of the four exceptions in that statute applied. Nowhere in his briefs to us do we find any argument that any one of the four exceptions specified in section 2033.420, subdivision (b), applies here.

In his opening brief in this court, Sasser offers two arguments in support of his position that the trial court's award of costs was incorrect. First, he argues that the trial court erred because "Allstate did not identify when and what they did to prove the response to Request No. 17 was incorrect." He then expands on this argument by contending that the fee award did not "bear a rational relationship to the fees actually incurred," and argues that this case is similar to *Smith v. Circle P Ranch Co.* (1978) 87 Cal.App.3d 267, 280, where the appellate court "reversed the award of attorney fees based on an arbitrary division of attorney fees. . . ." Second, Sasser argues that Allstate improperly delayed its motion for attorney fees regarding both request no. 17 and others until after the trial was completed, pointing out that the case was pending before a different judge than the one who presided at the time the requests for admission were filed and answered and summary adjudications granted and, additionally, that he had filed a second amended complaint after Allstate had filed its requests for admission.

We easily reject both arguments. Neither was raised by Sasser in the trial court. And both are legally incorrect.

Regarding his argument that there was no evidence as to what Allstate "did to prove the response to Request No. 17 was incorrect," there are two simple answers. First, and as noted above, section 2033.420, subdivision (b), specifies four exceptions to when and why a trial court may award attorney fees for the unwarranted denial of a request for admission. Sasser identifies none of them as supporting this argument. Second, the trial court granted summary adjudication as to the negligence cause of action and Sasser did not appeal from that portion of the trial court's order. Certainly, this failure implies

19

rather strongly that no evidence was available to Sasser with respect to the alleged negligence of Allstate with regard to this transaction.

We also reject Sasser's argument that there was no "rational relationship" between the award and the fees that may have been incurred by Allstate in defending against the negligence claim. The trial court's order observed that the judge who had ruled on the summary adjudication motion had specifically noted that "negligence is not a theory of recovery which insureds can generally assert against their insurers for coverage denials." The court then went on: "This court has reviewed the case history; the discovery motions and orders; their nature and timing; the parties [*sic*] submissions in support of and in opposition to Allstate's motion for summary judgment; listened to the evidence at trial submitted by each party and taken the jury's verdict here; reviewed the motion here and each party's argument and briefs in support and opposition to the relief requested here and orders as follows . . . ." It then denied section 2033.420 sanctions as to seven of the requests for admission, but ruled "[a]s to Request for Admission No. 17, however, the court finds that Code of Civil Procedure section 2033.420 sanctions are appropriate. Again, based on the court's review of the entire record here (excepting trial) it finds that an award of $25,000 out of the total of approximately $131,000 incurred during the relevant time period is a reasonable amount expended in establishing the matters at issue here."

This award was not, as Sasser appears to argue, simply an acceptance of Allstate's requested award, which, as we understand it, was $43,924.34 "relating to the causes of action for negligence and negligent infliction of emotional distress," which, divided in half (no award was made regarding the latter of Sasser's original claims), amounted to $21,962.17. The trial court apparently determined to round this figure up to $25,000. There was no abuse of discretion. As the court stated in *Garcia v. Hyster Co.* (1994) 28 Cal.App.4th 724, 737, a trial court "has discretion to base an award on an informed opinion of ' "the value of services rendered" ' in his or her courtroom." (See also, to the same effect: *Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500, 508-512;

20

*Wimberly, supra,* 56 Cal.App.4th at p. 637, fn. 10; *Barnett, supra,* 90 Cal.App.4th at p. 499; and *Laabs, supra,* 163 Cal.App.4th at pp. 1275-1277.)

Sasser's final argument against the section 2033.420 award is that shortly after he filed his response to Allstate's request for admissions, he filed an amended complaint, and this "made the request [for admissions] null and void without a showing by Allstate that the alleged facts were unchanged, and the request as drafted relates to the subsequent complaints." Sasser's argument seems to be that Allstate cannot recover attorney fees incurred because (1) it did not file a timely request for such fees and (2) somehow his denial of that request was voided for purposes of section 2033.420 because of the filing, two days later, of Sasser's second amended complaint. Neither argument is convincing.

First, Sasser never raised either of these arguments in the trial court. A party simply may not on appeal make an argument not raised in the trial court. (See Eisenberg et al., Civil Appeals & Writs, *supra,* ¶¶ 1:44 and 8:249 et seq.)

Second, Sasser's argument that Allstate unreasonably delayed in making its request for attorney fees under section 2033.420 is unsupported by authority. Sasser admits that "there is no rule when a discovery motion for sanctions can be brought," but then appears to argue that, because "a motion for cost [*sic*] should be brought within 15 days after an order," such a limitation ought to apply in a case such as this. Sasser cites no authority so holding, and we have found none even suggesting any such time limit for motions under section 2033.420. Allstate brought its motion for attorney fees 15 days after the court had entered judgment in its favor on Sasser's second amended complaint. There was nothing untimely in this.

Third, and related to the foregoing argument, Sasser contends that it "was an abuse of discretion for the trial court [i.e., Judge McGuiness] to determine fees for work before another judge [Judge Lee]. . . . Here, the trial court was not the summary judgment judge and could not determine the value of professional services put forth before the other court." Or, as Sasser puts it in his reply brief, "the trial judge had no jurisdiction to award discovery sanctions where the cause of action was disposed of by a summary

21

judgment court." Neither brief cites any authority holding, or even suggesting, that such a rule applies to an award of attorney fees under section 2033.420.[10]

Before making the postjudgment attorney fee award at issue here, Judge McGuiness had before him the entire record of the relevant pretrial proceedings before both Judge Lee and himself. And in his order granting the award he specifically stated that he had "reviewed the case history; the discovery motions and orders; their nature and timing," etc. That record was, pursuant to a specific order of the trial court, presented to it via briefing directed to that issue by both parties. The most comprehensive discussion of the application of section 2033.420 we have found does not suggest there is any time limitation regarding either the (a) filing of a motion for an award of fees or (b) entry of an order by the trial court responsive to such a motion. (See 2 Witkin, Cal. Evidence (5th ed. 2012) Discovery, § 177.)

Fourth, we reject Sasser's argument that request for admission no. 17 was "overbroad and ambiguous" for two reasons: (1) it is not, and (2) Sasser never raised any such objection in the trial court.

Finally, we reject Sasser's contention that Allstate acted "in reverse bad faith" by attempting to recover attorney fees against Allstate, and that its request for fees was a "thin veil of deception." Again, such argument was never made in the trial court. Moreover, the authority Sasser cites in support of this argument, *California Fair Plan Assn. v. Politi* (1990) 220 Cal.App.3d 1612, involved a claim for attorney fees by an insurer that had prevailed in a bad faith action brought against it by some insureds. That case did not involve a statute such as section 2033.420 or any other remotely similar statute, and is thus inapplicable here.

---

[10] Sasser contends that *Gamble v. Los Angeles Dept. of Water & Power* (2002) 97 Cal.App.4th 253, 259 (*Gamble*) "states a motion for fees must be heard by the judge that heard the summary judgment [motion] unless the judge is unavailable." This is simply incorrect; *Gamble* involved only the issue of the timeliness of motions for the recovery of costs filed by defendant public entities under Code of Civil Procedure section 1038.

22

We end the discussion with the observation that the cost-of-proof sanction under section 2033.420 is designed to compensate for unnecessary expenses resulting from proving matters unreasonably denied. Thus, the propounding party may be awarded such sanctions even if, as here, it ends up not prevailing at trial. (See *Smith v. Circle P Ranch Co., Inc., supra,* 87 Cal.App.3d 267 [$30,000 award to losing party].)

For all of the reasons stated above, we find no abuse of discretion by the trial court in its award of $25,000 in attorney fees to Allstate for Sasser's denial of its request for admission no. 17.

### DISPOSITION

The judgment is reversed, the cost award vacated, and the matter remanded for further proceedings consistent with this opinion. The order awarding attorney fees is affirmed. Each side will bear its costs on appeal.

_____

Richman, J.

I concur:

_____

Lambden, J.

23

Dissenting opinion of Haerle J.

I respectfully dissent. I do so on the ground that, under well-established law, appellant is barred from arguing on appeal that the trial court erred in its instructions to the jury, specifically in its special instruction no. 18.

In the trial court, appellant never asked for an instruction stressing, or even using, the words, "by the insured" in that—or any other relevant—instruction. Nor did his attorney even cite *MRI Healthcare Center Of Glendale, Inc. v. State Farm General Ins. Co., supra,* 187 Cal.App.4th 766 or any other pertinent case in her opening brief to us. Nor, when she cited it in her reply brief to this court, she never argued, even slightly, that the "from the standpoint of the insured" language should have been used by the trial court in its special instruction no. 18. And it is clear why she cannot so argue: in the trial court, she never suggested any such language in *appellant's* requested instruction on the meaning of "accidental."

The law is clear that an appellant cannot prevail because of alleged error in an instruction when such an alleged error was never called to the attention of the trial court—and, for that matter, never even argued to the appellate court. Witkin makes this point clear; he states: "In order to complain of failure to instruct on a particular issue, the aggrieved party must request the *specific* proper instruction. [Citations.] [¶] Similarly, if the court gives an instruction correct in law, but the party complains that it is too general, lacks clarity, or is incomplete, the party *must request* the additional or qualifying instruction in order to have the error reviewed." (7 Witkin, Cal. Procedure, *supra,* Trial, § 260, pp. 313-314, italics added.) [1]

---

[1] Nothing in the subsequent section of Witkin cited by the majority differs from or alters this statement; that section of Witkin's discussion concerning instructions is entitled "Instructions on Court's Own Motion." (7 Witkin, Cal. Procedure, *supra*, § 261.) No such instruction was involved here.

1

Substantial case authority supports this statement of the law. See, for example: *Conservatorship of Gregory* (2000) 80 Cal.App.4th 514, 520-521; *Scofield v. Critical Air Medicine, Inc.* (1996) 45 Cal.App.4th 990, 1010-1011; *Suman v. BMW of North America* (1994) 23 Cal.App.4th 1, 9; *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1686.) Perhaps most importantly, just five years ago, our Supreme Court, citing both *Gregory* and same wording from Witkin quoted above (albeit from an earlier edition) held to exactly the same effect. In *Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1131, the court stated: " 'Where, as here, "the court gives an instruction correct in law, but the party complains that it is too general, lacks clarity, or is incomplete, he must request the additional or qualifying instruction in order to have the error reviewed." [Citations.]' [Citation.] Plaintiff's failure to request any different instructions means he may not argue on appeal the trial court should have instructed differently. [Citations.]" (Italics omitted.)

I respectfully submit that this rule clearly applies here. As noted above, in the trial court, appellant never asked for an instruction stressing , or even using, the words "by the insured" with regard to the meaning of "accidental event." Even more importantly, in his briefs to us, appellant does not argue that the "by the insured" term should have been inserted. For these reasons, I would affirm the judgment of the trial court.

_____
Haerle, Acting P.J.

2